UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| MARVIN RIST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 2:12-cv-507 |
| v. | ) | |
| | ) | |
| LAKESHORE DUNES APARTMENTS, | ) | |
| | ) | |
| Defendants. | ) | |

OPINION AND ORDER

This matter is before the court on the Motion for Summary Judgment [DE 41] filed by the

defendant, Lakeshore Dunes Apartments, on January 10, 2014; the Motion for Extension of

Time to Respond [DE 45] filed by the plaintiff, Marvin Rist, on February 12, 2014; the Motion

for Plaintiff to Submit Audio Recordings [DE 46] filed on February 12, 2014; and the Motion to

Amend Plaintiff's Response to Defendant's Motion for Summary Judgment [DE 50] filed on

March 14, 2014.

For the following reasons, the Motion for Summary Judgment [DE 41] is **GRANTED**;

the Motion for Extension of Time to Respond [DE 45] is **DENIED AS MOOT**; the Motion for

Plaintiff to Submit Audio Recordings [DE 46] is **DENIED**; and the Motion to Amend Plaintiff's

Response to Defendant's Motion for Summary Judgment [DE 50] is **DENIED**.

*Background*

Lakeshore Dunes Apartments is a fourteen building apartment complex with six hundred

and eighty units located in Gary, Indiana. It has approximately twenty full and part-time

employees at any time who perform management, maintenance, leasing, janitorial, and grounds

1

and security duties.   Kinzie Realty Corporation purchased the complex in April of 2007. Andrew Brown and Charles Clarke III, both white males, are the principals of Kinzie.  Stella Vanderhere, a Hispanic female, has been employed as the office manager of Lakeshore since 2001.  Vanderhere oversaw all aspects of the operations of the complex, including hiring and terminating employees, assigning tasks to employees, and tenant relations.

The plaintiff, Marvin Rist, a while male, was a tenant of Lakeshore.  He initially signed his lease on July 31, 2006, and renewed it on an annual basis through 2012.  On December 1, 2008, Vanderhere hired Rist to work part-time up to thirty-two hours a week.  Rist was hired as a janitor, and his primary responsibilities were to empty the trash chutes in each building and to pick up the trash around the buildings.  Because these duties did not require thirty-two hours a week to complete, Vanderhere would assign Rist other tasks to perform.  Otherwise, Rist would not have been scheduled for thirty-two hours as he desired.  Most of the tasks involved performing menial labor or assisting maintenance workers.  It was not unusual for employees to perform tasks that were outside the scope of their regular position in light of the limited number of employees at Lakeshore.

While Rist was employed, Lakeshore also employed three female janitors.  Initially, two of the females were Hispanic and one was black.  One of the Hispanic females left and was replaced by a black female.  All of the janitor positions were thirty-two hour a week positions. However, one janitor, Sonia Torres, became a full-time employee when she took on the additional task of deep cleaning apartment units after the tenants vacated.  This task previously was done by an outside contractor.  The three female janitors had primary responsibilities that differed from Rist because they were assigned to clean specific buildings whereas Rist was

assigned to empty trash chutes and clean up the outside grounds.

On July 9, 2012, Vanderhere learned that Rist was injured while removing a mattress from a unit and was unable to work. Vanderhere understood that Rist was diagnosed with a muscle strain in his back. She never was informed that he suffered from any kind of disability. After his injury, Rist returned to work on light duty. He performed such tasks as picking up papers around the building, sweeping, and sedentary office tasks. Rist was told not to lift heavy items and stopped tending to the trash chutes. Other employees assisted in performing the duties Rist no longer could perform.

On August 31, 2012, Jonas Pierce, a Lakeshore maintenance worker, overheard a conversation between Brown and Rist. According to Pierce, Brown saw Rist standing by a building, and Rist told him he was taking a break. After Brown walked away, Rist told Pierce that "I'm going to take him to the woods and kill him." Pierce reported this to Vanderhere, and he also informed her that earlier in the month Rist had made a comment about blowing up the office. Vanderhere found the threats particularly troubling because Lakeshore recently had experienced criminal acts of violence on the property which resulted in deaths, including a triple homicide and two deaths from an arson.

Vanderhere immediately notified Brown and Ivy Posada, an agent with the human resource service used by Kinzie Realty, about the threats. Posada came out to Lakeshore and interviewed several employees. Pierce confirmed the comments, and the other employees complained that Rist was interfering with their ability to perform their duties because he constantly was talking about his injury and Workers' Compensation case. After consulting with Brown and Posada, Vanderhere terminated Rist for his threatening comments which were in

violation of the Kinzie Realty Corporation Employee Handbook. The relevant portions of the handbook prohibited "threatening bodily harm to or intimidation of another person or Company property or business" or engaging in "problematic conduct, committed on or off Kinzie premises, which is of such a nature that Andrew W. Brown or Charles F. Clarke III, in their sole discretion, determines that continued employment with Kinzie is inappropriate."

Rist received a discount toward his rent because he was an employee. Lakeshore required employees who lived on site to sign a Staff Apartment and Occupancy Agreement. Rist signed one when he renewed his lease for 2012, which gave him a monthly discount of $152.60. The Staff Occupancy Agreement stated:

> It is expressly agreed by Employee that Agent has the right at any time to request Employee to vacate the assigned apartment within ten (10) days written notice without terminating the employment relationship between Employee and Agent. If the employment relationship between Employee and Agent is terminated for any reason, the lease and this addendum shall automatically terminate as of the date said employment ceases, and Employee shall then have ten (10) days from the date of termination of employment to vacate the apartment. It is hereby understood and mutually agreed, by and between Employee and Agent that said ten (10) day period for Employee to vacate the apartment is an essential and material condition of the attached lease and this addendum.

(Vanderhere Aff., Ex. B)

After he was terminated, Rist was given notice that Lakeshore was exercising its right to terminate his lease. Rist did not vacate his apartment voluntarily and became delinquent in his rent. Lakeshore initiated eviction proceedings against Rist. On December 12, 2012, a hearing was held at which Rist appeared in the Gary City Court, and the court entered an order of ejectment and possession, awarding possession of the unit to Lakeshore. On January 23, 2013, a second evidentiary hearing was held to determine the amount of money Rist owed Lakeshore. Rist appeared, and a monetary judgment was entered against Rist.

4

Following his termination, on October 18, 2012, Rist filed a claim with the Indiana Workers' Compensation Board for the injuries he sustained while employed with Lakeshore. The case remains pending.

Rist also filed a charge of discrimination with the Equal Employment Opportunity Comission, alleging discrimination based on race, sex, and disability. The EEOC chose not to pursue his claim, and Rist proceeded to file his complaint with this court on December 5, 2012. In his complaint, Rist stated that he is seeking compensation for wrongful termination of his employment, wrongful termination of his lease, and injury caused by his employer. Lakeshore now moves for summary judgment on all of Rist's claims.

After Lakeshore submitted its motion, Rist requested an extension of time to file his response. However, he filed a response on the original due date and later sought to amend his response. Rist also filed a motion for leave to submit audio recordings in support of his response.

*Discussion*

Rist first asked the court to extend his time to respond to Lakeshore's motion for summary judgment until February 19, 2014. However, Rist submitted his response on February 14, 2014, as the court originally directed. For this reason, Rist's Motion for Extension of Time to Respond [DE 45] is **DENIED AS MOOT.**

On March 14, 2014, Rist filed a motion to amend his response to Lakeshore's motion for summary judgment. His motion states that he was told by two tenants of Lakeshore Dunes Apartments that the owner threatened them. In the next paragraph, he complains that he was terminated from two employers and that he believes that Lakeshore induced Kelly Services to

get him the job at Art Van Furniture to prevent him from filing his response to their motion for summary judgment on time. Later, he complains that he was terminated from PolyCon Industries for filing his response brief and for working there with two witnesses who also were tenants of Lakeshore Dunes Apartments. Rist further includes statements made by individuals, one whose identity he desires to keep confidential, and speculation about the cause of his termination.

Rist's motion does not identify any alterations he desires to make to his original response. Rather, it appears to contain additional information that was not included in his former response. For this reason, the court will construe his motion as one for leave to file a sur-reply. Rule 7.1(a) permits parties to file an initiating brief, a response, and a reply, but it does not contemplate the filing of a sur-reply or response to the reply brief. The court generally does not permit litigants to file a surreply brief. *Hall v. Forest River, Inc*., 2008 WL 1774216, *n.3 (N.D. Ind. April 15, 2009); *Runkle v. United States.*, 1995 WL 452975, *1 (N.D. Ind. May 9, 1995). However, "[a] surreply brief is occasionally allowed when it raises or responds to some new issue or development in the law." *Merril Lynch Life Ins. Co. v. Lincoln Nat. Life Ins. Co.*, 2009 WL 3762974, at *1 (N.D. Ind. Nov. 9, 2009) (citing *Hall v. Forest River, Inc*., No. 3:04-CV-259, 2008 WL 1774216, at *n. 3 (N.D. Ind. Apr. 15, 2008)). The courts decision to permit or deny a sur-reply brief is reviewed under an abuse of discretion standard. *Cleveland v. Porca Co.*, 38 F.3d 289, 297 (7th Cir. 1994).

Rist's proposed "amendment" does not identify any new issues that Lakeshore raised for the first time in its reply brief that he was not afforded an opportunity to respond to, nor does it cite to any new developments in the law. Rather, it consists entirely of speculation and hearsay

statements that Rist argues support his position and does not include any admissible evidence that the court may consider.  At this stage, as Rist was advised by Lakeshore, he must submit evidence, such as affidavits and deposition testimony, to show the court what information the witnesses who he has identified have and what bearing they have on his claim.  It is not apparent how Rist's termination from two employers following his termination from Lakeshore and the alleged threats Lakeshore made to individuals who are not parties to this matter are relevant to Rist's claims against Lakeshore.  Rist does not state that the threats were related to the other individuals' involvement with this case, nor does his subsequent termination from two unrelated businesses have any bearing on whether his termination from Lakeshore was legal.  For these reasons, Rist's Motion to Amend [DE 50] is **DENIED**.

Rist also filed a motion to submit audio recordings in support of his response in opposition. Federal Rule of Civil Procedure 56(c) states that a party disputing a fact must support his assertion by citing to particular parts of materials in the record.  "The court need consider only the cited materials."  **Rule 56(c)(3)**.  Rist did not need leave of court to submit evidence in support of his position.  However, he did not cite to the recordings in his response, and the court need not consider the audio recordings at this stage.  Moreover, he has not explained the information contained on the recordings or what relevance the recordings have to this action. For these reasons, Rist's motion is **DENIED**.

Turning now to Lakeshore's motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if it is demonstrated that "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548 , 91 L. Ed. 2d 265 (1986);

*Kidwell v. Eisenhauer,* 679 F.3d 957, 964 (7th Cir. 2012); *Stephens v. Erickson,* 569 F.3d 779, 786 (7th Cir. 2009). The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 160, 90 S. Ct. 1598, 1610, 26 L. Ed.2d 142, 155 (1970); *Stephens*, 569 F.3d at 786. A fact is material if it is outcome determinative under applicable law. There must be evidence on which the jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986); *Stephens*, 569 F.3d at 786; *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). However, summary judgment may be entered against the non-moving party if it is unable to "establish the existence of an essential element to [the party's] case, and on which [that party] will bear the burden of proof at trial . . .". *Kidwell*, 679 F.3d at 964 (citing *Benuzzi v. Bd. of Educ*., 647 F.3d 652, 662 (7th Cir. 2011) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Summary judgment is inappropriate for determination of claims in which issues of intent, good faith, and other subjective feelings play dominant roles. *Ashman v. Barrows,* 438 F.3d 781, 784 (7th Cir. 2006). Upon review, the court does not evaluate the weight of the evidence, judge the credibility of witnesses, or determine the ultimate truth of the matter; rather, the court will determine whether there exists a genuine issue of triable fact. *Wheeler*, 539 F.3d at 634 (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986)).

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury

might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

> [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.

> *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L.Ed.2d 202, 212 (1986).

*See also* ***Reeves v. Sanderson Plumbing Prods., Inc***., 530 U.S. 133, 149-51, 120 S.Ct. 2097, 2109, 147 L. Ed.2d 105, 120-22 (2000) (setting out the standard for a directed verdict); ***Celotex Corp***., 477 U.S. at 322-23, 106 S. Ct. at 2553; ***Stephens***, 569 F.3d at 786; ***Argyropoulos v. City of Alton***, 539 F.3d 724, 732 (7th Cir. 2008)(stating that a genuine issue is one on which a reasonable fact finder could find for the nonmoving party); ***Springer v. Durflinger***, 518 F.3d 479, 483 (7th Cir. 2008)(stating that a genuine issue exists and summary judgment is inappropriate if there is sufficient evidence for a jury to return a verdict for the nonmoving party).

Rist first has alleged that Lakeshore discriminated against him by terminating him based on his gender, race, and disability, in violation of Title VII and the Americans with Disabilities Act. Title VII of the Civil Rights Act of 1964 prohibits discrimination "against any individual with respect to his compensation, terms, conditions, or privileges of employment" on account of race and sex. **42 U.S.C. § 2000e-2(a)(1)**. Title VII enables a plaintiff to prove discrimination by direct evidence of discriminatory intent or, where no direct evidence exists, by using the indirect-burden shifting method established in ***McDonnell Douglas Corporation v. Green***, 411 U.S. 792, 802-05,

93 S.Ct. 1817, 1824-25, 36 L.Ed.2d 668 (1973), and refined in ***Texas Department of Community Affairs v. Burdine***, 450 U.S. 248, 253, 101 S.Ct. 1089, 1092, 67 L.Ed.2d 207 (1981). *See **Moser v. Indiana Department of Corrections***, 406 F.3d 895, 900-01 (7th Cir. 2005). The direct method requires the plaintiff to show through either direct or circumstantial evidence that the employer's adverse employment action was impermissibly motivated. ***Wilkins v. Riveredge Hospital***, 130 Fed. Appx. 823, 828 (7th Cir. 2005).

The most general statement of the ***McDonnell Douglas*** method of proof is that the plaintiff has the initial burden of showing that: 1) he belongs to a protected group; 2) he was performing to the employer's legitimate expectations; 3) he suffered an adverse employment decision; and 4) the employer treated similarly situated employees who are not in the protected group more favorably. *See **Keeton v. Morningstar, Inc***., 667 F.3d 877, 884 (7th Cir. 2012); ***Moser***, 406 F.3d at 900; ***O'Neal v. City of Chicago***, 392 F3d 909, 911 (7th Cir. 2004); ***Williams v. Waste Management of Illinois, Inc***., 361 F.3d 1021, 1029 (7th Cir. 2004). This framework is flexible and may be adapted to fit each case. ***Burdine***, 450 U.S. at 253 n.6, 101 S.Ct. at 1094 n.6; ***Wohl v. Spectrum Manufacturing, Inc.***, 94 F.3d 353, 359 (7th Cir. 1996). However, this method has been called into question by the Seventh Circuit in favor or a more straightforward method. The Seventh Circuit has proposed that the court make the following inquiry: "is the plaintiff in a class protected by the statute; has he suffered a harm; and could a rational jury find the latter resulted from the former." ***Shreeve v. D.O. McComb & Sons, Inc***., 2013 WL 5707196, *5 (N.D. Ind. Oct. 21, 2013) (citing ***Hitchcock***, 718 F.3d at 737 (7th Cir. 2013) (citing ***Coleman***, 667 F.3d at 863 (7th Cir. 2012) (Wood, J., concurring)).

Once the plaintiff has met this initial burden, "a presumption of discrimination arises, and the employer must articulate a legitimate, nondiscriminatory reason for its employment action."

*Moser*, 406 F.3d at 895; *O'Neal*, 392 F.3d at 911. The defendant's burden is not one of persuasion, but rather of production and "can involve no credibility assessment." ***St. Mary's Honor Center v. Hicks***, 509 U.S.502, 509, 113 S.Ct. 2742, 2748, 125 L.Ed.2d 407 (1993); ***Reeves v. Sanderson Plumbing Products, Inc***., 530 U.S. 133, 142, 120 S.Ct. 2099, 2106, 147 L.Ed.2d 105 (2000). The burden then shifts back onto the plaintiff to show that the reason given by the defendant is just a pretext for discrimination. ***Moser***, 406 F.3d at 900-01. The plaintiff cannot establish pretext merely by showing that the "reason was doubtful or mistaken." ***Crim v. Board of Education of Cairo School District No. 1***, 147 F.3d 535, 541 (7th Cir. 1998). Rather, the plaintiff must show that the employer is lying or that the employer's reasoning has no basis in fact. ***Guerrero v. Ashcroft***, 253 F.3d 309, 313 (7th Cir. 2001); ***Ransom v. CSC Consulting, Inc***., 217 F.3d 467, 471 (7th Cir. 2000); ***Crim***, 147 F.3d at 541.

Despite the shifting burden of production, the ultimate burden of persuasion remains at all times with the plaintiff. ***Moser***, 406 F.3d at 901; ***Haywood v. Lucent Technologies, Inc***., 232 F.3d 524, 531 (7th Cir. 2003); ***Stockett v. Muncie Indiana Transit System***, 221 F.3d 997, 1001 (7th Cir. 2000). A plaintiff alleging discrimination, however, has a lesser burden when proceeding on a summary judgment motion. In ***Anderson v. Baxter Healthcare Corp***., 13 F.3d 1120 (7th Cir. 1994), the Seventh Circuit stated:

> Both *McDonnell Douglas* and [*St. Mary's Honor Center v. Hicks*, 509 U.S. at 507, 113 S.Ct. at 2747] speak to the burden the plaintiff bears at trial. However, for summary judgment purposes, the nonmoving party, in this case the plaintiff, has a lesser burden. He must only "produce evidence from which a rational fact-finder could infer that the company lied" about its proffered reasons for dismissal.

13 F.3d at 1124 (quoting Shager v. Upjohn, 913 F.2d 398, 401 (7th Cir. 1994))

*See also **Plair v. E.J. Brach & Sons, Incorporated***, 105 F.3d 343, 349 (7th Cir. 1997); ***Cliff v.***

11

***Board of School Commissioners of the City of Indianapolis, Indiana***, 42 F.3d 403, 412 (7th Cir. 1994). If the plaintiff is unable to meet his burden, his claims must fail.

Rist has not presented any direct evidence of discrimination based on race or gender and must proceed under the ***McDonnell-Douglas*** burden shifting method. Lakeshore disputes whether Rist was in a protected class, whether he was performing in accordance with their reasonable expectations, and whether similarly situated employees were treated more favorably.

The Seventh Circuit has modified the ***McDonnell-Douglas*** test to allow non-minority groups to show reverse discrimination. However, a claim for discrimination based on being white or male bears the additional hurdle of showing background circumstances that demonstrate that the "employer has 'reason or inclination to discriminate invidiously against whites' or evidence that 'there is something 'fishy' about the facts at hand.'" ***Phelan v. City of Chicago***, 347 F.3d 679, 684 (7th Cir. 2003). *See also* ***Good v. University of Chicago Medical Center***, 673 F.3d 670, 679 (7th Cir. 2012); ***Farr v. St. Francis Hospital and Health Centers***, 570 F.3d 829, 833 (7th Cir. 2009). This is because discrimination against white men is less common. ***Phelan***, 346 F.3d at 684-685. When determining whether "fishy" circumstances exist, courts have considered evidence that the plaintiff's employer was of another race or sex than the plaintiff, the plaintiff's replacement was of another race or sex, the employer deviated from its own policies, the plaintiff did not violate the policies at issue, other white, male employees were terminated for reasons that non-minority female employees were not terminated for, that the employer did not apply its policies uniformly, or that all promotions were given to minorities. *See* ***Good,*** 673 F.3d 670; ***Phelan*** 347 F.3d at 684*;* ***Felice v. Republic Airlines***, 954 F.Supp.2d 812, 824 (N.D. Ind. 2013). The court will consider all of the circumstances to determine if there was something peculiar surrounding the circumstances of the plaintiff's adverse

employment action.  *See **Good**,* 673 F.3d at 679.

For example, in ***Felice***, the plaintiff, a Caucasian male, sued for reverse discrimination.  In support of his position, Felice demonstrated that his employer did not follow its own disciplinary policies in terminating Felice; the company policies reportedly violated by Felice were not necessarily violated; the only other pilots terminated for an inability to perform their job duties safely were Caucasian males (except one who was Hispanic); and Republic did not engage in progressive discipline with respect to Felice but did not terminate other non-Caucasian or female pilots for seemingly more serious conduct.  ***Felice***, 954 F.Supp.2d at 824.  The court determined that Felice showed sufficient background circumstances to survive summary judgment.  ***Felice***, 954 F.Supp.2d at 824.

Contrary to ***Felice***, in ***Good*** and ***Phelan***, the plaintiffs were Caucasians who were terminated by and replaced by another Caucasian.  Neither presented background circumstances that would allow a reasonable jury to conclude that they were fired in part because they were white.  In ***Good***, the plaintiff argued that the policies were applied in an unprecedented fashion and identified three instances where minorities with deficient performances had the opportunity to take a demotion rather than suffer more onerous discipline.  ***Good***, 673 F.3d at 679.  The court determined that Good's evidence did not rise to a level sufficient to show suspicious background circumstances because the record did not demonstrate that his employer had an anti-white bias, a history of discrimination, or a formal or informal affirmative action policy.  ***Good***, 673 F.3d at 679.  Similarly, in ***Phelan***, the court explained that the plaintiff had an abundance of poor work habits and that the plaintiff failed to show that there was anything "fishy" about his termination.  ***Phelan***, 347 F.3d at 685.

Rist similarly has failed to show the background circumstances necessary to proceed with

his claim. Of relevance, Rist stated that an issue of fact remains with regard to whether Andre Coulter, an African-American male, was hired to replace him, and whether part-time minorities were offered more hours than he was. **Good** and **Phelan** suggest that termination by a minority and replacement by a minority may show bias against non-minorites. However, Rist's argument fails on multiple accounts. Although he was terminated by Vanderhere, a Hispanic female, his termination did not occur until after she consulted with the property owner, Andrew Brown, a white male, who approved Rist's termination. Moreover, he was replaced by a male, weakening his sex discrimination claim.

Second, as demonstrated in **Good**, evidence of a few isolated incidents is insufficient. Rist has not pointed to any events outside his own to show that Lakeshore had an anti-white policy. There is nothing of record that suggests that his termination was suspicious and done so that a minority could be hired. Rist has not demonstrated a history of favorable treatment for non-minorities or that Lakeshore had anti-white sentiments. The closest Rist comes to achieving that is his suggestion that minorities were given more hours than he was. However, Rist has not submitted any evidence to show that this is true. *See **Anderson***, 477 U.S. at 248, 106 S.Ct. at 2510 (explaining that there must be evidence on which the jury reasonably could find for the nonmoving party). Lakeshore, on the other hand, has submitted evidence that one minority janitor was elevated to full-time status because she took on the additional job of cleaning apartments after the tenants moved out. While employed, Rist was scheduled 32 hours a week, as the parties agreed at the time he was hired. This was consistent with the number of hours the other part-time janitors were scheduled.

Rist was given assignments that differed from the other janitors, but Lakeshore has submitted evidence to show that this was the nature of his position. The part-time female janitors were

assigned to specific buildings, whereas Rist was assigned to the trash chutes and apartment grounds. Rist has not pointed to any evidence to show that this was inconsistent with the terms of his employment as the parties originally agreed. The circumstances surrounding Rist's termination are far more attenuated than in *Good* or *Phelan*, as he has failed to show that there is any indication that Lakeshore took either his gender or race into consideration when terminating his employment, rather than terminating him solely on the basis of his threatening statements.

Even if Rist was able to show the suspicious circumstances necessary to proceed with his race and sex discrimination claim, both claims must be dismissed on account of his failure to show that he was performing at his employer's legitimate expectations and that he was treated less favorably than members outside of his class. The employee handbook stated that an employee could be terminated for making comments threatening bodily harm. The undisputed evidence shows that Rist made threatening comments. Lakeshore conducted an investigation, and four employees verified that Rist had made comments about hurting other employees or tenants. Rist does not deny making those comments and has not submitted any evidence to show that he was acting in accord with Lakeshore's reasonable expectations or, even if he could make a prima facie case, that Lakeshore's stated reason for terminating his employment was a pretext for discrimination.

Additionally, Rist has not identified any similarly situated employees who were treated more favorably. He does argue that some minorities outside of his protected class received more hours, which, as explained above, is unsupported by the evidence. However, he has not identified any minorities who violated an employment policy or made threats to Lakeshore or its tenants and were retained or given progressive discipline. This is fatal to Rist's claims for race and sex discrimination. He has failed to set forth a prima facie case, and even if he could, he has not

rebutted Lakeshore's reason for terminating his employment.

Rist also claims that Lakeshore discriminated against him on the basis of disability.   The Americans with Disabilities Act ("ADA") prohibits discrimination against an individual based upon such person's disability.  **42 U.S.C. § 12112(a).**  An individual claiming protection must show that he is "disabled."  **42 U.S.C. § 12112(a).**  An individual is disabled within the meaning of the ADA when he suffers a physical or mental impairment that substantially limits one or more major life activities, has a record of such impairment, or is regarded as having such an impairment.  **29 C.F.R. § 1630.2.**  Major life activities include activities that a person generally does on a daily basis, including, but not limited to, "walking, seeing, hearing, speaking, breathing, learning, and working." **29 C.F.R. § 1630.2(i).**  The court must make an individualized analysis to determine whether an individual's impairments "substantially limit" his "major life activities."  *E.E.O.C. v. Lee's Log Cabin, Inc.*, 546 F.3d 438, 442 (7th Cir. 2008).

The "regarded as" prong of the ADA's definition of disability addresses impairments that are not in fact disabling, but believed to be so.  *Krocka v. City of Chicago*, 203 F.3d 507, 513-14 (7th Cir. 2000); *Brunker v. Schwan's Home Service, Inc*., 583 F.3d 1004, 1008 (7th Cir. 2009) ("Under a "regarded as" theory, the plaintiff must demonstrate either that (1) the employer mistakenly believes that the employee has an impairment that substantially limits a major life activity, or (2) the employer mistakenly believes that an existing impairment, which is not actually limiting, does substantially limit a major life activity"); *Kotwica v. Rose Packing Company, Inc*., 637 F.3d 744, 749 (7th Cir. 2011).  "The Supreme Court has noted that in order to make out a claim under the "regarded as" prong, "it is necessary that a covered entity entertain misperceptions about the individual." *Sutton v. United Airlines, Inc.,* 527 U.S. 471, 489, 119 S.Ct. 2139, 2150, 144

L.Ed.2d 450 (1999). These misperceptions may take the form of believing "either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment, when, in fact, the impairment is not so limiting." *Krocka*, 203 F.3d at 514.

After a defendant establishes that he is disabled or regarded as such, he then must show that he is qualified for the position in question. *Hoffman v. Caterpillar, Inc*., 256 F.3d 568, 572 (7th Cir. 2001). A qualified person with a disability is someone who (1) has a disability but still satisfies the requisite skill, experience, education, and other job-related requirements of his employment position, and (2) can perform the essential functions of the position held or desired, with or without reasonable accommodation. **29 C.F.R. § 1630.2(m)**; *Budde v. Kane County Forest Preserve*, 597 F.3d 860, 862 (7th Cir. 2010). Consideration is given to the employer's judgment as to what functions of the job are essential. **42 U.S. § 12111(8);** *Jackson v. City of Chicago*, 414 F.3d 806, 811 (7th Cir. 2005). When an employee is unable to perform the essential functions of employment, the court must consider whether any reasonable accommodation for the disabled employee would help him perform the job. *Amadio v. Ford Motor Company,* 238 F.3d 919, 928 (7th Cir. 2001); *see* **42 U.S.C. § 12112(b)(5)(A)** (requiring the employer to make reasonable accommodations); *see also* **42 U.S.C. § 12111(9)** (defining "reasonable accommodation"). "Accommodations are 'only . . . required when necessary to avoid discrimination on the basis of a disability." *CTL v. Ashland School District*, No. 13-1790, (7th Cir. 2014)(citing *Wisconsin Community Services Inc. v. City of Milwaukee*, 465 F.3d 737, 753 (7th cir. 2006). If any accommodation would place an "undue hardship" on the employer's business, the employer is not required to make the accommodation. *Amadio*, 238 F.3d at 928; *see* **42 U.S.C. § 12112(b)(5)(A)** (providing that the employer does not have to undertake accommodations that create an undue hardship); *see also* **42 U.S.C. § 12111(10)**

(defining undue hardship). In other words, an "unqualified" individual would be someone who could not do the job no matter what reasonable accommodations the employer made for that employee. *Filar v. Board of Education of City of Chicago*, 526 F.3d 1054, 1067 (7th Cir. 2008).

"Once a plaintiff has established that [he] is a qualified individual with a disability, [he] may show discrimination in either of two ways: by presenting evidence of disparate treatment or by showing a failure to accommodate." *Hoffman*, 256 F.3d at 572 (*citing Sieberns v. Wal-Mart Stores, Inc.*, 125 F.3d 1019, 1021-22 (7th Cir. 1997)). In disparate treatment claims, the plaintiff may prove that he was treated differently than other workers on the basis of a protected characteristic either with direct evidence or indirectly using the *McDonnell Douglas* burden-shifting method. *Hoffman*, 256 F.3d at 572 (*citing McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). "In order to prevail in the absence of direct evidence, a plaintiff must first make out a prima facie case by showing that: (1) [he] is disabled within the meaning of the ADA; (2) [he] was meeting the legitimate employment expectations of her employer; (3) [he] suffered an adverse employment action; and (4) similarly situated employees received more favorable treatment." *Hoffman*, 256 F.3d at 572.

Rist claims that he was disabled because of a back injury he incurred while employed by Lakeshore. To survive summary judgment, Rist first must show that he was disabled within the meaning of the ADA and no longer could perform a major life activity. As explained above, this includes such tasks as "walking, seeing, hearing, speaking, breathing, learning, and working." **29 C.F.R. § 1630.2(i).** Rist has not submitted any evidence that he was unable to walk, work, or perform any comparable task as a result of his injury. Although he was limited to light duty as a result of his injury and could not lift or move heavy objects, Rist was released to work and continued

to do so both for a period of time at Lakeshore and with subsequent employers.  Rist has not submitted any doctor's notes or medical evidence stating that he no longer can perform light or sedentary work, and he has failed to show that he was limited in any major life activity.

Rist also could proceed with his claim if he was able to show that Lakeshore regarded him as disabled.  However, Vanderhere stated that she was informed that Rist had a back strain but that it never was reported to her that Rist was disabled.  Rather, Rist was released to perform light duty work, and she found jobs consistent with this restriction for him to perform.  Rist also admitted that at the time he was terminated it "was not yet determined by doctors or MRI medical reports if injury was to become a disability".  (Pl.'s Resp. p. 4)  The record reflects that once Lakeshore became aware of Rist's injury, it attempted to accommodate him by assigning him jobs consistent with this restriction and assigning other janitors to perform the tasks that required heavy lifting.  Rist has not submitted any evidence that suggests that Lakeshore believed he had a permanent, disabling injury that limited a major life activity rather than a short-term muscle strain.

In any case, Lakeshore accommodated Rist's injury by re-allocating job assignments and allowing him to continue to work until he violated one of their policies.  The undisputed evidence reflects that Rist threatened the management and tenants, in violation of Lakeshore's employment policies, and that he was not performing to his employer's reasonable expectations.  The record is devoid of any indication that his termination was due in part to any other reason.

Rist also included state law claims for wrongful termination of his employment and wrongful termination of his lease.  In Indiana, employment generally is at-will.  **Hudson v. Wal-Mart Stores, Inc**., 412 F.3d 781, 785 (7th Cir. 2005).  Courts are disinclined to conclude otherwise in the absence of an employment contract for a definite or ascertainable term.  **Baker v. Tremco Inc**., 917 N.E.2d

650, 653 (Ind. 2009); ***Cruse v. Hook-Superx, Inc***., 561 F.Supp.2d 993, 1002 (N.D. Ind. 2008).  The

Indiana Supreme Court has rejected arguments that an employee handbook can create an

employment contract.  *See **Orr v. Westminster Village North, Inc**., 689 N.E.2d 712 (Ind.1997). See*

*also, e.g., **Mires v. Landolfi**, 908 F.2d 975, 1990 WL 100816, at \*1 (7th Cir. July 10, 1990); **Walker***

***v. Rieth-Riley Construction Company***, 2005 WL 1799535, at \*2 (N.D. Ind. July 25, 2005); ***Burke***

***v. Board of Directors of Monroe County Public Library***, 709 N.E.2d 1036, 1042 (Ind. App. 1999),

*vacated in part on other grounds upon rehearing*, 711 N.E.2d 1288 (Ind. App. 1999); ***Lavery v.***

***Southlake Center for Mental Health***, 566 N.E.2d 1055, 1057 (Ind. App. 1991).  However, an

exception arises if the employee provided adequate independent consideration, such as leaving an

assured permanent position for a new position only after receiving assurance guaranteeing similar

permanency.[1]  ***Baker v. Tremco, Inc.***, 917 N.E.2d 650, 653-654 (Ind. 2009).

The record is devoid of any indication that Lakeshore gave Rist any assurance that his

position was for a fixed period of time.  In fact, the employment handbook suggests otherwise.  The

provision under which Rist was terminated stated that an employee could be terminated, even for

a first offense, for threatening bodily harm or intimidation "which is of such a nature that Andrew

W. Brown or Charles F. Clarke III, in their sole discretion, determines that continued employment

with Kinzie is inappropriate".  (Dft.'s Ex. 2)  Because this provision gives the management

discretion to terminate employment, this shows that Rist's employment was at will and that he did

---

[1]Indiana also recognizes a cause of action for employees terminated in retaliation for filing a worker's compensation claim.  ***Hudson v. Wal–Mart Stores, Inc***., 412 F.3d 781, 785 (7th Cir. 2005).  However, Rist was terminated on August 30, 2012, and did not file his claim with the Workers' Compensation Board until October 18, 2012, following his termination.  Therefore, Rist could not establish a causal connection between his Workers' Compensation claim and his termination.

not have any assurances to continue in his position, particularly after making the statements that led to his termination. At-will employees do not have a contractual right to their position and cannot proceed with claims for wrongful termination. Therefore, summary judgment must be awarded in favor of Lakeshore on this claim.

Rist also alleges that Lakeshore wrongfully terminated his lease. Lakeshore responded that this matter was settled in state court and that res judicata bars Rist from raising this claim in this matter. Under Indiana law, when a party argues that the claim preclusion component of res judicata applies, four factors must be present, namely: (1) the former judgment must have been rendered by a court of competent jurisdiction; (2) the former judgment must have been rendered on the merits; (3) the matter now in issue was, or could have been, determined in the prior action; and (4) the controversy adjudicated in the former action must have been between parties to the present suit or their privies. *In re L.B.*, 889 N.E.2d 326, 333 (Ind.App.2008). *See also* ***Lewis v. Suthers***, 2012 WL 1564132, \*1 (7th Cir. May 4, 2012); ***Hayes v. City of Chicago***, 670 F.3d 810, 813 (7th Cir.2012); ***Leal v. Krajewski***, 803 F.2d 332, 335 (7th Cir.1996); ***Miller Brewing Co. v. Indiana Department of State Revenue***, 903 N.E.2d 64, 70 (Ind. 2009); ***Afolabi v. Atlantic Mortgage & Investment Corp***., 849 N.E.2d 1170, 1174 (Ind. App. 2006).

On November 27, 2012, Lakeshore filed an eviction action with the Gary City Court. The Gary City Court had jurisdiction under Ind. Code §§ 33-35-2-5 and 33-28-1-2. At this time, the Gary City Court addressed whether Rist's lease was terminated. Rist appeared before the court and evidence was presented at the possession and damage hearings. The Gary City Court entered judgment in favor of Lakeshore, and Rist was ordered to vacate the premises. All of the elements of claim preclusion were satisfied and for this reason, Rist cannot proceed with his claim for

wrongful termination of his lease.  Even if he was not precluded from proceeding on this claim, his lease agreement stated that Lakeshore could terminate it with ten days notice.  Rist has failed to show that he had a contractual right to stay in his apartment longer than the term specified in the contract.

In his complaint, Rist states that the termination of his employment and lease were due to an injury the employer caused.  To the extent that Rist is seeking damages for his injury, the Workers' Compensation Act is the exclusive remedy because his injury arose out of and in the course of his employment.  *See* **Ind. Code § 22-3-2-6**; ***Crowe v. Blum***, 9 F.3d 32 (7th Cir. 1993). Rist cannot proceed with his claim for damages for personal injury.

Based on the foregoing reasons, the Motion for Summary Judgment [DE 41] is **GRANTED**; the Motion for Extension of Time to Respond [DE 45] is **DENIED AS MOOT**; the Motion for Plaintiff to Submit Audio Recordings [DE 46] is **DENIED**; and the Motion to Amend Plaintiff's Response to Defendant's Motion for Summary Judgment [DE 50] is **DENIED**.

ENTERED this 28th day of May, 2014

/s/ Andrew P. Rodovich
United States Magistrate Judge